FLITTER MILZ, P.C.
BY: CARY L. FLITTER
IDENTIFICATION NO. 35047
BY: ANDREW M. MILZ
IDENTIFCATION NO. 207715
BY: JODY THOMAS LÓPEZ-JACOBS
IDENTIFICATION NO. 320522
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

ATTORNEY FOR PLAINTIFF

JOSE LOPEZ,
               Plaintiff,

vs.

NEW JERSEY SUN TECH, LLC and
SUNLIGHT FINANCIAL, LLC and
CORNING CREDIT UNION
               Defendants.

COURT OF COMMON PLEAS
LUZERNE COUNTY

NO. 2023-11532

## TO THE DEFENDANTS:

| NOTICE | ADVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| NORTH PENN LEGAL SERVICES, INC.:<br>33 N. Main Street, Suite 200<br>Pittston, PA 18640<br>(570) 299-4250<br>(877) 824-0001 (Toll Free) | SERVICIOS LEGALES de NORTH PENN, INC.<br>33 la Calle Main del Norte, Oficina 200<br>Pittston, PA 18640<br>(570) 299-4100<br>(877) 953-4250 Llamada gratuita |



**FLITTER MILZ, P.C.**                    ATTORNEYS FOR PLAINTIFF
BY: CARY L. FLITTER                       JOSE LOPEZ
IDENTIFICATION NO. 35047
ANDREW M. MILZ
IDENTIFICATION NO. 207715
JODY THOMAS LOPEZ-JACOBS
IDENTIFICATION NO. 320522
450 North Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

| JOSE LOPEZ, | COURT OF COMMON PLEAS |
|---|---|
| Plaintiff, | LUZERNE COUNTY |
| vs. | |
| | NO. 2023-11532 |
| NEW JERSEY SUN TECH, LLC | |
| and | |
| SUNLIGHT FINANCIAL, LLC | |
| and | |
| CORNING CREDIT UNION | |
| Defendants. | |

## AMENDED COMPLAINT – CIVIL ACTION

### PRELIMINARY AVERMENTS

1.      This is an action for declaratory relief and damages for Defendants' violation of

Pennsylvania's consumer protection laws and for related torts. The action arises out of an

unconscionable and oppressive loan agreement to finance the installation of solar panels on a

modest Wilkes-Barre home owned by Plaintiff Jose Lopez. Mr. Lopez speaks Spanish only, and

cannot speak or read English.

1

2.      Defendant Sunlight Financial, LLC, working in tandem with door-to-door sales company Defendant SunTech and a finance partner Defendant Corning Credit Union, approached Mr. Lopez with a Spanish-language sales pitch, but then caused Mr. Lopez to enter into a solar system contract and loan agreement written in English only, which resulted in Mr. Lopez not being properly informed about the details of the contracts, his rights or obligations under them, and that he had the right to cancel the contract within a three-day period as provided by law.  That same law requires contract documents to be provided to consumers "in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation."

3.      The solar panels failed to operate properly, resulted in little to no offset of his utility bill as he was promised, and caused damage to Mr. Lopez's home.  When Mr. Lopez ultimately learned of his right to cancel the contracts and did cancel them, Defendants refused to accept the cancellation and continued to bill Mr. Lopez for installment payments. Mr. Lopez has yet to receive a copy of the fraudulent loan.

4.      Mr. Lopez seeks: (a) a declaration that the loan agreement has been cancelled and that he has no further obligations under it; (b) the release of the unilaterally placed UCC Financing Statement, which has clouded his home; (c) actual, treble, and statutory damages for Defendants' unlawful actions undertaken in violation of Pennsylvania consumer protection laws, and (d) damages for the torts committed in the fraudulent sale.

## PARTIES

5.      Plaintiff Jose Lopez is a 69-year-old, Spanish-speaking only consumer residing at 62 Conwell Street, Wilkes-Barre, PA ("the property" or "the home").

2

6.      Defendant New Jersey Sun Tech, LLC ("Suntech") is a foreign limited liability corporation, registered to do business in Pennsylvania, with a registered office 831 Seybert St, Hazleton, Pa 18201.

7.      Defendant Sunlight Financial, LLC ("Sunlight") is a foreign limited liability corporation, registered to do business in Pennsylvania, with a registered agent listed as Corporation Service Company, 2595 Interstate Dr #103, Harrisburg, PA 17110.

8.      Defendant Corning Credit Union ("Corning") is federal credit union with branch offices in Pennsylvania, including 800 Norland Ave, Chambersburg, PA 17201.

9.      On information and belief, Suntech, Sunlight, and Corning routinely acted together, and did so here, to sell and finance the sale of solar electric systems.

10.      Venue lies in this Court, because this action stems from occurrences that took place in Luzerne County and concerns a UCC Financing Statement recorded in Luzerne County.

## FACTUAL AVERMENTS

### *Misrepresentations in the Solar Sale*

11.      Jose Lopez is a resident of Wilkes-Barre, having moved here from the Dominican Republic over a decade ago.

12.      Mr. Lopez has resided in his Wilkes-Barre property since purchasing it in 2017.

13.      Mr. Lopez speaks Spanish only.  He cannot speak, read, or write in English.

14.      In or around August 2021, Christian Gonzales, a door-to-door salesman working on behalf of all the Defendants, solicited Mr. Lopez at the property regarding the installation of solar panels.

15.    Defendants' salesman conducted the entire sales pitch in Spanish.

16.    The salesman told Mr. Lopez that purchasing a solar system would result in elimination of his PPL electric bill, typically in the $400-600 range, and that Lopez would only need to pay PPL $18 a month for connection of the solar system.

17.    The salesman told Mr. Lopez that if he allowed Defendants to install solar panels on their roof, there would be no cost to him and he would realize substantial savings on his electric utility costs.

18.    The salesman told Mr. Lopez that the system should generate more electricity than he needed, resulting in him receiving a credit or cash payments toward his PPL electrical bill.

19.    Those representations were false.

20.    Based on those representations, and reasonably relying on those representations, Mr. Lopez agreed to consider having the solar system installed.

21.    Had Mr. Lopez known those representations were false, he never would have agreed to installation of the system.

22.    Despite speaking only Spanish, all the contract documents associated with the sale, installation, and financing of the solar panels were in English.

23.    Mr. Lopez was never shown any contract documents in Spanish.

24.    Mr. Lopez was never given a paper contract in any language, Spanish or English.

25.    Mr. Lopez asked for a copy of the contract in Spanish, and the salesman said it would be provided. However, to this date, Mr. Lopez has not received a Spanish-language copy of the contract.

4

26.    Mr. Lopez was never told about nor given a copy of an "Notice of Right to Cancel" in Spanish.

27.    Mr. Lopez was never told about nor given any contract documents mentioning arbitration in Spanish.

28.    Had Mr. Lopez been provided with contract documents in Spanish, where he could see the true terms and costs, he would never have agreed to installation of the system.

*__Defendants Hide the True Nature of the Deal__*

29.    At the time of sale, the salesman presented Mr. Lopez with a computer tablet.

30.    There were no paper documents presented, signed, or exchanged, and the computer tablet did not depict any contractual terms.

31.    Mr. Lopez was not shown any electronic contract documents or provisions, but was only shown a place where he could make his initial and sign his name.

32.    Mr. Lopez signed the salesman's tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.* that solar would eliminate his electrical bill (save $18 for a connection charge) and he would only have a monthly payment toward the loan for the panels.

33.    Upon information and belief, Defendants emailed contract documents in English only to joselopez3087@gmail.com.

34.    That is not Plaintiff's email address, but rather that of his son, who also only speaks and reads in Spanish.

5

35.    On information and belief, Defendants' salesman engaged in fraud in the execution, as he misrepresented the nature of what Mr. Lopez was agreeing to do in signing the computer tablet.

## *Defendant's Faulty Product Damages the Home …*

36.    SunTech eventually installed photovoltaic panels and related equipment (collectively, "the solar panels" or "the panels") on the property and connected them to his electric service in or around February 2022.

37.    Shortly after installation, the panels stopped working.

38.    In or around August 2023, the utility panel for the solar array that was installed by Suntech in Mr. Lopez's basement caught fire and was destroyed.

39.    Suntech sent an electrician to install a second utility panel and hook the solar array up to that.  In doing so, Suntech's own electrician commented that the first panel was installed incorrectly during the first installation.

## *… Saps Mr. Lopez's Finances and Skims the Equity in His Home*

40.    Even after making that repair, the solar array continued not to function properly.

41.    The installation of the solar panels has damaged his roof, causing it to leak and generate black mold in his home, including in rooms where his children and grandchildren sleep.

42.    Mr. Lopez has had to expend at least six hours of work, $60-70 in paint and supplies, and additional money on a dehumidifier to rectify this.

43.    Mr. Lopez has never seen the reduction in his PPL bills that he was promised.

44.     Despite being promised to have a PPL bill of $18 per month, he routinely still received bills of $300, $400, or $500 or more for his monthly electric bill.

45.     When combined with the $683 monthly bill for the solar loan to Sunlight and Corning, Mr. Lopez's electricity costs are astronomical for this family on a fixed budget.

46.     Although the installation of the solar panels was supposed to reduce Mr. Lopez's electric utility bills, it did not.  Moreover, the net cost of his electric service increased drastically after the installation of the panels due to the cost of the monthly loan payments due to Sunlight/ Corning.

47.     The economics of this transaction are so one-sided as to benefit the Defendants that the entire transaction is permeated with commercial unconscionability.

48.     On or about March 15, 2022, Defendant Corning caused a UCC Financing Statement to be recorded with Luzerne County.  The secured party's name, as set forth on the Financing Statement, was Corning Federal Credit Union.

49.     As a result of the lien, if Mr. Lopez wanted to sell his home, he would need to settle with Defendants first and pay them for their faulty product and hidden loan.

50.     If Mr. Lopez had known or understood all the terms of this solar deal, which were hidden from him in a language he could not read, he never would have agreed to have the system installed.

***Defendants' Interrelated Business Models and Agency***

51.     On or around March 8, 2024, the Attorney General of Minnesota sued Sunlight for fraudulent sales conduct in that state.  A copy of the complaint is available here: https://www.ag.state.mn.us/Office/Communications/2024/docs/SolarLending_Complaint.pdf

7

(last visited June 24, 2024).

52.    In its complaint (at pp. 22-29), Minnesota's attorney general made the following factual statements related to the agency between Suntech (solar sales and installation) and Sunlight (solar funding) and Corning (the capital funding source):

    a.  Sunlight Financial tells solar companies: "We provide financing to help your customers go solar. The way we provide that financing is by working with multiple capital providers … to provide that capital for you to sell those loans."

    b.  Sunlight Financial trains solar companies to tell consumers the financial institutions that it partners with are "providing the funds" for its loans.

    c.  Under contracts with its capital funders, Sunlight Financial conducts underwriting, marketing, training to partner solar companies, servicing and collection of payments, compliance and "risk management services," and disclosures and presentation of loan documents to consumers.

    d.  Sunlight Financial also coordinates between capital funders and solar companies, approves and monitors solar companies they partner with, and reviews and processes loan applications. Sunlight Financial also repurchases loans that failed underwriting standards, were taken out based on misrepresentation or omission, or were subject to repurchase by the capital funder from the loan's assignee.

    e.  Sunlight Financial dictates the terms and methods for solar companies to market and sell its loans.

f.  Sunlight Financial touts that its management has significant experience in selling residential solar-panel systems and designed its loan products to maximize sales. It claims that its "streamlined online look ... provides instant, at-the-kitchen table approvals, paperless underwriting and document generation, and online signing and submission procedures."

g.  It emphasizes the speed that it processes loan applications, stating they get approvals "while [the sales representative is] in the home" and has "no confirmation call to hold up the process."

h.  Sunlight Financial administers and disburses funds to pay for financed systems, provides training, and is "responsible for the compliance" of loan documents.

i.  The capital funder generally pays money into an account administered by Sunlight Financial, with Sunlight Financial acting as paying agent on a given loan and disbursing the funds to the solar company. Sunlight Financial will also make advances to the solar company before installation is complete.

j.  Sunlight Financial offers training to solar companies on how to market Sunlight Financial loans. This includes videos that instruct sales representatives about Sunlight Financial loan features. Sunlight Financial training instructs on how to sell residential solar-panel systems and tells solar companies to "include [Sunlight Financial's] financing options in" sales proposals. Sunlight Financial tells solar companies to "GO forth and sell Sunlight loans!"

9

k.  Sunlight Financial also emphasizes fast approvals during sales visits with consumers. For example, it promotes that it will approve customers "at point of sale" and allow sellers to "ma[k]e deals quick + hassle free."

l.  Sunlight Financial also has a "Sunlight Rewards" program that provides sales representatives that meet sales targets for Sunlight Financial loans with vacations, appliances, furniture, and vehicles. As stated in one training, "[Y]ou can get rewards points in prizes simply for … selling Sunlight."

m.  Sunlight Financial's loan is first introduced in a sales proposal created for each customer by the solar company. Sunlight Financial offers software and templates for creating sales proposals. Generally, the sales proposal presented by the solar company includes slides identifying payment for the system via a Sunlight Financial loan and emphasizes a low interest rate and low monthly payments that will be offset by utility savings.

n.  If the consumer agrees to purchase the system and finance with Sunlight Financial, they sign a purchase agreement with the solar company. The sales representative will also input the customer's information into Sunlight Financial's portal. Sunlight Financial will preliminarily check qualifications for the loan and, if qualifications are met, email loan documents to the consumer.

o.  The consumer then executes loan documents with the sales representative either on the representative's tablet or on the consumer's own device. As part of this process and pursuant to agreements with the solar company

10

and capital funder, Sunlight Financial is responsible for representing loan terms and complying with consumer-lending laws (subject to review by capital funders).

p.  The largest cost to the consumer charged by Sunlight Financial as part of the loan is its upfront fee imposed at the time of origination and added to the principal balance. Sunlight Financial's fee is sometimes labeled internally as its "OID" or "Original Issue Discount."

q.  The fee is not calculated as part of the "finance charge" or APR disclosed to consumers as the cost of financing in loan documents or the APR identified in sales proposals and other communications to consumers.

r.  Sunlight Financial further confirms in their training with solar companies that the upfront fee is added to and included in the financed sale price charged by the solar company. As stated in one training, "When you guys are quoting your customer, you are already building in the dealer fee that goes through your company. So when you're quoting your customer on these payments, when you're putting that loan amount, you're assuming the … dealer fee."

s.  Sunlight Financial's upfront fee is nowhere identified in marketing materials or loan documents and is not included in the calculation of the "finance charge" or "annual percentage rate" disclosed to borrowers.

53.     Upon information and belief, all the aspects of Sunlight's program as relates to Minnesota solar companies, applies with equal force to Suntech (solar company) and Corning (capital funder) at the time of the sale to Mr. Lopez.

11

54.     Upon information and belief, all of the text above in Paragraph 52 applies to the

agency relationship between Sunlight and its lending partner Corning and the salesmen of

Suntech who go to consumers' doorsteps, like that of Mr. Lopez.

**_Defendants Pattern and Practice of Fraud_**

55.     On information and belief, Defendants, as a matter of policy, do not provide

signed contract documents in paper format at the time of signing, nor do they provide copies in

Spanish to ESP-speaking-only individuals.

56.     On information and belief, Defendants have a pattern and practice of

misrepresenting to consumers the very nature of the transaction, resulting in consumers

unwittingly signing decades-long solar contracts, including loans, without their knowledge or

consent.

**_Mr. Lopez Cancels the Transaction_**

57.     Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection

Law ("UTPCPL"), 73 P.S. § 201-7, Defendants were required to provide Mr. Lopez with the

notice of his right to cancel their respective transactions within three full business days following

the day of the transactions.

58.     The UTPCPL, at 73 P.S. § 201-7, sets out the contents and formatting

requirements of such a notice.

59.     The Notice must clearly and conspicuously say:

"You, the buyer, may cancel this transaction at any time prior to midnight of the
third business day after the date of this transaction. See the attached notice of
cancellation form for an explanation of this right."

13  Pa. C.S. § 201-7(b).

12

60.     Under the law, "A fully completed receipt or copy of any contract pertaining to such sale, which is in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation, and also in English." 13 Pa. C.S. § 201-7(b).

61.     Defendants never provided Mr. Lopez with a notice that complied with the above-referenced requirements, as he never got a notice in Spanish, the only language he understands.

62.     Before May 30, 2024, Mr. Lopez was never provided with printed copies of a notice of his right to cancel.

63.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7(e), provides that "[t]he cancellation period provided for in this section shall not begin to run until buyer has been informed of his right to cancel and has been provided with copies of the 'Notice of Cancellation.'"

64.     Because the requisite notices had not been provided as of May 30, 2024, the three-day rescission period had not begun to run, and Mr. Lopez retained the right to rescind the transaction.

65.     On May 30, 2024, Mr. Lopez's counsel sent Defendants a notice that Mr. Lopez had cancelled the transactions.

66.     Sunlight responded to the letter, indicating it will not cancel the transaction.

67.     None of the Defendants ever notified Mr. Lopez or counsel that they intended to repossess or abandon any shipped or delivered goods.

68.     Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7(i), by failing to respond to the notice within ten days and by failing to

repossess the goods within 20 days, Defendants forfeited all rights to the goods, including the solar panels and associated equipment and the proceeds of the loan.

69.     As described above, Mr. Lopez validly cancelled the purported contracts with Defendants.

70.     Nonetheless, Defendants continue to demand payments from Mr. Lopez.

***Damage to Mr. Lopez***

71.     As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Mr. Lopez has been damaged.

72.     Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Mr. Lopez becoming obligated on contracts he never legally saw or signed, including the 20-year loan and the installation agreement.

73.     Mr. Lopez has suffered an ascertainable loss of money or property, including: a damaged roof burdened with defective solar panels, money expended to repair leaks and mold caused by faulty installation, the benefit of his bargain in the form of eliminated electric bills to PPL that he never realized, damage from a lien that slanders his title and strips equity in his home, mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT 1: DECLARATORY RELIEF

74.     All previous averments are incorporated herein by reference.

75.     Pursuant to the Declaratory Judgments Act, 42 Pa. C.S.A. § 7531 *et seq.*, courts are empowered to enter declaratory judgments to determine rights, status, and other legal relations including determinations as to the validity of contracts and the rights of parties thereunder.

14

76.    As described above, Mr. Lopez cancelled the purported transactions with Defendants by sending them each a notice of cancellation on May 30, 2024.

77.    As described above, none of the Defendants responded to the notice of cancellation within ten days agreeing to the cancellation, nor did they repossess the goods within 20 days.

78.    Nonetheless, Defendants have continued to take actions as if the purported transactions had not been cancelled.

**WHEREFORE,** Plaintiff requests that this Court:

        a.  Enter judgment in favor of Plaintiff and against Defendants.

        b.  Declare that Plaintiff was entitled to, and validly did, cancel the purported contracts with Defendants, and that he has no payment obligation to them.

        c.  Award the costs of this action and such other relief as the Court deems necessary and proper.

### COUNT 2: UNFAIR TRADE PRACTICES

79.    All previous averments are incorporated herein by reference.

80.    The solar installation and finance documents constitute and reflect the purchase of goods and services primarily for personal, family or household purposes as defined in the UTPCPL, 73 P.S. § 201-9.2.

81.    Defendants' activities in connection with the sale and installation of the solar panels and the arranging of a loan to cover the cost of the sale and installation constitute the conduct of "trade and commerce" as defined in the UTPCPL, 73 P.S. § 201-2.

82.     The goods or services provided by Defendants had a sale price well in excess of $25.00.

83.     As described above, the goods and services provided by Defendants were sold or contracted as a result of or in connection with a contact or call on Mr. Lopez at his residence, either in person or by telephone, within the meaning of the UTPCPL, 73 P.S. § 201-7.

84.     The sales presentation of Defendants to Mr. Lopez, during which these Defendants intentionally misrepresented the nature of the transaction and intentionally failed to disclose material terms of the contracts, constituted unfair or deceptive acts or practices under the UTPCPL, 73 P.S. § 201-2(4), which prohibits, among other things:

> a.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. 73 P.S. § 201-2(4)(ii).
>
> b.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 P.S. § 201-2(4)(v).
>
> c.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

85.     Mr. Lopez relied upon the deceptive representations of Defendants as part of his decision-making process to go forward with the transaction.

86.     As a result of the unfair and deceptive acts and practices of Defendants, Mr. Lopez has suffered an ascertainable loss in the amount of the purported loan transaction, money spent on repairs, damage to his home value and equity in his home, and other amounts.

87.     As a result of Defendants' unfair and deceptive acts and practices, Mr. Lopez has suffered a further ascertainable loss in the reduction in value of his home and in the value of the solar panels affixed to his home as a result of the panels being inoperable, which rendered them unusable for the generation of electricity.

88.     In addition, as a result of Defendants' unfair and deceptive acts and practices, Mr. Lopez has suffered further damages including headaches, nausea, fright, anxiety, emotional distress, depression, and loss of sleep.

89.     Pursuant to the UTPCPL, 73 P.S. §201-9.2, a person who suffers an ascertainable loss of money or property as a result of the use or employment of an unfair or deceptive act or practice prohibited by the Act may bring an action to recover actual damages or $100, whichever is greater, and a Court may, in addition to actual damages, award treble damages, costs and reasonable attorney's fees, and such additional relief as it deems necessary or proper.

**WHEREFORE,** Plaintiff requests that this Court:

> a. Award Plaintiff actual and treble damages against Defendants in an amount to be determined at trial.
>
> b. Award reasonable attorney's fees to Plaintiff's counsel.
>
> c. Award the costs of this action and such other relief as the Court deems necessary and proper.
>
> d. Issue a declaration that the transaction is rightfully cancelled pursuant to 73 P.S. §201-7.

## COUNT 3: SLANDER OF TITLE

90.     All previous averments are incorporated herein by reference.

17

91.     As described above, a UCC Financing Statement was recorded against the property by Corning Federal Credit Union purporting to take a security interest in Mr. Lopez's title and interest in the solar panels and associated equipment.

92.     On information and belief, Corning is the present holder of the UCC Financing Statement.

93.     Upon Mr. Lopez's cancellation of the purported loan transaction and Defendants' failure to respond to the notice of cancellation, the UCC Financing Statement no longer constituted a lien on the property.

94.     Nonetheless, Corning failed and refused, after Mr. Lopez cancelled the purported loan transaction, to release the UCC Financing Statement of record.

95.     Defendants knew or should have known that upon cancellation of the purported loan transaction and the failure to respond to the notice of cancellation, the UCC Financing Statement was no longer valid and must be released of record.

96.     Defendants expressly recognized that they were clouding the title of Mr. Lopez's property.

97.     The continued existence of record of an unreleased UCC Financing Statement is of a disparaging nature that could foreseeably impair the value of the property in the estimation of others.

98.     As a result of Defendants' continued failure to release the UCC Financing Statement, Mr. Lopez has suffered damages, in that the value of his equity in his home is diminished by the amount of the remaining balance of the cancelled loan, the precise amount of which will be determined in discovery.

18

**WHEREFORE,** Plaintiff requests that this Court:

    a. Enter judgment in favor of Plaintiff and against Defendants.

    b. Award Plaintiff damages against Defendants in an amount to be determined at trial.

    c. Award Plaintiff the costs of this action and for such other relief that this Court deems necessary and proper.

### COUNT 4: FRAUD

99.    All previous averments are incorporated herein by reference.

100.    Defendants had a duty to provide a copy of the contracts to Plaintiff in Spanish. 13 Pa. CS 201-7.

101.    Defendants knew but did not disclose the existence of material contract terms to Plaintiff at the time of the purported transaction. Instead, Defendants hid the subject contracts from Plaintiffs by using a foreign language.

102.    Defendant knew Plaintiff could not speak English, and did not consent to maintaining both a high electric bill and high monthly contract payments, as well as other onerous terms in the solar contracts.

103.    The information Defendants hid and did not disclose to Plaintiff was material to the decision to go forward with the transaction.

104.    Defendants' conduct was intentional, knowing, reckless, negligent, and willful.

105.    As a result of Defendants' conduct, Plaintiff has suffered damages including the claimed indebtedness arising from the transaction, damage to his home, out of pocket expenses

to remedy the damage, cloud to his title and burdened equity, mental and emotional distress, worry, anguish, and sleeplessness.

**WHEREFORE,** Plaintiff requests that this Court:

      a.  Enter judgment in favor of Plaintiff and against Defendants.

      b.  Award Plaintiff damages and punitive damages against Defendants in an amount to be determined at trial.

      c.  Award Plaintiff the costs of this action and for such other relief that this Court deems necessary and proper.

## COUNT 5: NEGLIGENCE

106.    All previous averments are incorporated herein by reference.

107.    Defendants had a duty to provide a copy of the contracts to Plaintiff in Spanish. 13 Pa. CS 201-7. Defendants had a duty not to cause damage to plaintiff's home by installation of a substandard product.

108.    Defendants were under a duty to exercise reasonable care in completing consumer contracts and installing the solar panel array.

109.    Defendants were under a duty to exercise reasonable care in supervising and overseeing their employees and agents.

110.    Defendants breached these duties.

111.    As a result of the aforesaid breach of duty, Defendant proximately caused, and Plaintiffs suffered, the injuries and damages set forth above.

**WHEREFORE,** Plaintiff requests that this Court:

      a.  Enter judgment in favor of Plaintiff and against Defendants.

20

b.  Award Plaintiff damages and against Defendants in an amount to be
determined at trial.

c.  Award Plaintiff the costs of this action and for such other relief that this
Court deems necessary and proper.

## COUNT 6: TRUTH IN LENDING ACT
### (against Corning and Sunlight)

112.    All previous averments are incorporated herein by reference.

113.    The stated purpose of the Truth in Lending Act is "to assure a meaningful
disclosure of credit terms so that the consumer will be able to compare more readily the various
credit terms available to him and avoid the uninformed use of credit, and to protect the consumer
against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

114.    The Act mandates that lenders disclose certain costs of credit associated with the
transaction. 15 U.S.C. § 1631(a) ("a creditor or lessor shall disclose to the person who is
obligated on a consumer lease or a consumer credit transaction the information required under
this subchapter").

115.    Terms such as "amount financed," "finance charge," "total of payments," and
"annual percentage rate" must be used, as well as a "descriptive explanation" of each of these
terms. 15 U.S.C. §1638(a)(2)–(5); 12 C.F.R. § 1026.18(b), (d)–(e), (h).

116.    The Act mandates that these disclosures be written "clearly and conspicuously,"
and that "[t]he terms 'annual percentage rate' and 'finance charge' shall be disclosed more
conspicuously." 15 U.S.C. §1632(a); 12 C.F.R. § 1026.17(a).

117.    The Act also requires the disclosure of "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6).

118.    "The creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 1026.17(b).

119.    On information and belief, Corning and Sunlight are both creditors under the fraudulent loan.

120.    Corning and Sunlight did not comply with the requirements of the TILA.

121.    Corning and Sunlight did not provide Mr. Lopez disclosures of the "amount financed," "finance charge," and "annual percentage rate," nor any other disclosures, as Corning and Sunlight did not provide Mr. Lopez the loan contract or any related disclosures contemporaneously with or prior to the loan transaction. Indeed, Corning and Sunlight have yet to provide Mr. Lopez a copy of any loan agreement.

122.    Corning and Sunlight violated the Truth in Lending Act, 15 U.S.C. §§ 1632(a), 1638(a)(2)–(6), and 12 C.F.R. § 1026.17–1026.18.

123.    Mr. Lopez detrimentally relied on Corning and Sunlight's failure to provide the above disclosures, because had these disclosures been provided to him, he would not have orally agreed to the installation of solar panels on his home.

124.    As a result of Corning and Sunlight's failure to provide the above disclosures, Mr. Lopez suffered damages including the purported loan obligation, as Corning and Sunlight continue to consider Mr. Lopez to be obligated under the loan.

**WHEREFORE**, Plaintiff demands judgment against Defendants Corning and Sunlight Financial for:

22

a.  Actual damages;

b.  Statutory damages;

c.  Reasonable attorneys' fees and costs; and,

d.  Such other relief as the Court shall deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS TO WHICH HE IS SO ENTITLED.**

Date: June 27, 2024                    */s/ Andrew M. Milz*_____

                                       CARY L. FLITTER
                                       ANDREW M. MILZ
                                       JODY THOMAS LOPEZ-JACOBS
                                       **FLITTER MILZ, PC**
                                       450 N. Narberth Avenue, Suite 101
                                       Narberth, PA  19072
                                       (610) 822-0782
                                       amilz@consumerslaw.com
                                       jlopez-jacobs@consumerslaw.com

                                       Attorneys for Plaintiff

23

## VERIFICATION / VERIFICACIÓN

I, Jose Lopez, do hereby state that the statements contained in Plaintiffs' Complaint are true and correct to the best of my knowledge, information, and belief. I make this statement with the knowledge that statements contained herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

Yo, José López, por la presente declaro que las declaraciones contenidas en la Demanda de los Demandantes son verdaderas y correctas a mi leal saber y entender. Hago esta declaración sabiendo que las declaraciones contenidas en este documento están sujetas a las sanciones de 18 Pa. C.S.A. § 4904 relativo a falsificación no jurada ante las autoridades.

Date: 06/25/2024

JOSE LOPEZ