# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE LOPEZ,<br><br>          Plaintiff,<br><br>   vs.<br><br>NEW JERSEY SUN TECH, LLC,<br>SUNLIGHT FINANCIAL, LLC, and<br>CORNING CREDIT UNION,<br><br>          Defendants. | No. 3:24-cv-01354-RDM |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT SUNLIGHT FINANCIAL, LLC'S
## <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

I.      Introduction ...................................................................... 1

II.     Facts ................................................................................. 3

        A.   The deceptive solar sale. ............................................ 3

        B.   Defendants hide the true nature of the transaction. ...................... 4

        C.   The defective solar panels and the damage to Mr. Lopez's home. 5

        D.   Defendants' integrated business model affords Sunlight the right
             to control the terms, manner, and means of the sales presentation...... 6

        E.   Sunlight's pattern and practice of fraud ....................................... 9

        F.   Mr. Lopez cancels the transaction. ............................................10

        G.   Damage to Mr. Lopez. ............................................................10

III.    Procedural History ...........................................................11

IV.     Statement of Questions Involved ....................................11

V.      Argument ...........................................................................11

        A.   Sunlight is on notice of the claims against them, as required by
             the pleading requirements of Federal Rule of Civil Procedure 9(b)...11

        B.   Plaintiff states a claim under the UTPCPL. ...............................17

        C.   Plaintiff states a claim for negligence. .......................................19

VI.     Conclusion ........................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Aiello v. Ed Saxe Real Est., Inc.*,

   499 A.2d 282 (Pa. 1985) ...............................................................................13, 14

*AT&T Co. v. Winback & Conserve Program, Inc.*,

   42 F.3d 1421 (3d Cir. 1994)................................................................................13

*Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*,

   441 F. Supp. 3d 23 (D.N.J. 2020).......................................................................12

*Farabaugh v. Pennsylvania Tpk. Comm'n*,

   911 A.2d 1264 (Pa. 2006) ..................................................................................19

*Feleccia v. Lackawanna Coll.*,

   215 A.3d 3 (Pa. 2019).........................................................................................19

*Frederico v. Home Depot*,

   507 F.3d 188 (3d Cir. 2007)...............................................................................12

*Grimmett v. Sunlight Fin. LLC*,

   No. 2:23-CV-00084, 2023 WL 6449447 (S.D.W. Va. Oct. 3, 2023) .................16

*In re Suprema Specialties, Inc. Sec. Litig.*,

   438 F.3d 256 (3d Cir. 2006)...............................................................................12

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*,

   65 F. App'x 803 (3d Cir. 2003)..........................................................................17

*Kalins v. Com., State Real Est. Comm'n*,

    500 A.2d 200 (Pa. Cmwlth. 1985) ........................................................................14

*Moon Area Sch. Dist. v. Garzony*,

    560 A.2d 1361 (Pa. 1989) ..................................................................................14

*Toy v. Metro. Life Ins. Co.*,

    928 A.2d 186 (Pa. 2007) ....................................................................................18

*Warner v. Vision Solar LLC*,

    No. 22-CV-5307, 2023 WL 4118348 (D.N.J. June 22, 2023) ............................12

## Statutes

73 P.S. § 201-1 ....................................................................................................... 1

73 P.S. § 201-7(b)(1) ..............................................................................................20

## Rules

Fed. R. Civ. P. 9(b) ..........................................................................................11, 12

## I.     INTRODUCTION

This case is part of a growing trend of door-to-door sales fraud perpetrated against Pennsylvanians, trapping them into 25-year loans for solar panel systems that are marketed as a "no cost" method of effectively eliminating one's electricity bill. After being visited by a door-to-door sales agent, Jose Lopez signed the solar salesman's electronic tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.* that solar would eliminate his electrical bill (save $18 for a connection charge) because the system would produce more energy than he needed, resulting in a credit or cash payments toward his electricity bill.

No paper or electronic documents were presented to Mr. Lopez, as the electronic tablet only showed places where he could initial and sign. The entirety of the transaction was in Spanish, as Mr. Lopez cannot speak or read English. Despite this, Defendants used contract documents that were in English only, and those documents were sent to an email address that Mr. Lopez does not use, all ensuring the true terms of the transaction would be hidden from him. Accordingly, Mr. Lopez brings claims for damages, rescission, and other relief under state and federal law, including the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq.

Defendant Sunlight Financial LLC ("Sunlight") moves to dismiss Plaintiff's Second Amended Complaint ("SAC"), arguing *inter alia*, that it is not responsible

for the door-to-door salesman's fraudulent and deceptive conduct. This argument ignores well-established common law principles of agency and public policy, which recognize that it would be unfair for a company to profit from an agent's misrepresentations only to later disclaim liability for the agent's actions.

Yet that is exactly what Sunlight seeks to do here—disclaim liability for its sales agent's fraud even though it relies on such agents to market and sell its loan products. Sunlight's argument finds no support in the case law, nor in the SAC, which includes numerous allegations demonstrating that Sunlight maintained substantial control over the sales agent's marketing of Sunlight's loan products, including by training the sales agents themselves.

Sunlight's remaining arguments are meritless. Sunlight argues it had no duty to Mr. Lopez, even though Sunlight undertook to train its sales agents on how to market Sunlight's products. Sunlight also contends that an integration clause in the loan document means Mr. Lopez could not justifiably rely upon the salesman's lies, which it likens to parol evidence. This argument likewise fails because Defendants hid the loan contract from Mr. Lopez through fraud in the execution—a well-recognized exception to the parol evidence rule. As such, this fine print in the hidden contract does not operate as a "get out of jail free" card to allow Sunlight to avoid accountability for the deception of its sales agent.

Sunlight's arguments lack merit, and its motion to dismiss must be denied.

## II.   FACTS

### A. The deceptive solar sale.

Jose Lopez is a resident of Wilkes-Barre, having moved here from the Dominican Republic over a decade ago. SAC ¶ 19. Mr. Lopez has resided in his Wilkes-Barre property since purchasing it in 2017. *Id.* ¶ 20. Mr. Lopez speaks Spanish only. *Id.* ¶ 21.  He cannot speak, read, or write in English. *Id.*

In or around August 2021, Christian Gonzales, a door-to-door salesman working on behalf of all the Defendants, solicited Mr. Lopez at the property regarding the installation of solar panels.  *Id.* ¶ 22.  Defendants' salesman conducted the entire sales pitch in Spanish. *Id.* ¶ 23.

Defendants' salesman then made a series of false representations to Mr. Lopez they knew were false. *Id.* ¶¶ 27, 115. Specifically, the salesman told Mr. Lopez that purchasing a solar system would eliminate his PPL electric bill, typically in the $400-$600 range, and Mr. Lopez would only need to pay PPL $18 a month for connection of the solar system. *Id.* ¶ 24. The salesman told Mr. Lopez that if he allowed Defendants to install solar panels on his roof, he would incur no costs and would realize substantial savings on his electric utility expenses. *Id.* ¶ 25.  The salesman also told Mr. Lopez that the system should generate more electricity than he needed, resulting in him receiving a credit or cash payments toward his PPL electrical bill. *Id.* ¶ 26.

3

Based on those misrepresentations, and reasonably relying on those misrepresentations, Mr. Lopez agreed to consider having the solar system installed. *Id.* ¶ 28. Had Mr. Lopez known those representations were false, he never would have agreed to installation of the system. *Id.* ¶ 29.

Despite speaking only Spanish, all the contract documents associated with the sale, installation, and financing of the solar panels were in English. *Id.* ¶ 30. Mr. Lopez was never shown any contract documents in Spanish. *Id.* ¶ 31. Mr. Lopez was never given a paper contract in any language, Spanish or English. *Id.* ¶ 32. Mr. Lopez asked for a copy of the contract in Spanish, and the salesman said it would be provided. *Id.* ¶ 33. However, to this date, Mr. Lopez has not received a Spanish-language copy of the contract. *Id.* ¶ 33. Mr. Lopez was never told about nor given a copy of an "Notice of Right to Cancel" in Spanish. *Id.* ¶ 34. Had Mr. Lopez been provided with contract documents in Spanish, where he could see the true terms and costs, he would never have agreed to installation of the system. *Id.* ¶ 36.

**B. Defendants hide the true nature of the transaction.**

At the time of sale, the salesman presented Mr. Lopez with a computer tablet. *Id.* ¶ 37. There were no paper documents presented, signed, or exchanged, and the computer tablet did not depict any contractual terms. *Id.* ¶ 38. Mr. Lopez was not shown any electronic contract documents or provisions, but was only shown a place where he could make his initial and sign his name. *Id.* ¶ 39. Mr. Lopez signed the

4

salesman's tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.* that solar would eliminate his electrical bill (save $18 for a connection charge) and he would only have a monthly payment toward the loan for the panels. *Id.* ¶ 40.

Upon information and belief, Defendants emailed contract documents in English only to an email address that is not Plaintiff's, but rather that of his son, who also only speaks and reads in Spanish. *Id.* ¶¶ 41–42.

### C. The defective solar panels and the damage to Mr. Lopez's home.

A company called New Jersey Sun Tech, LLC ("Suntech") eventually installed photovoltaic panels and related equipment (collectively, "the solar panels" or "the panels") on the property and connected them to his electric service in or around February 2022. *Id.* ¶ 44. Shortly after installation, the panels stopped working. *Id.* ¶ 45. In or around August 2023, the utility panel for the solar array that was installed by Suntech in Mr. Lopez's basement caught fire and was destroyed. *Id.* ¶ 46. Suntech sent an electrician to install a second utility panel and reconnect the solar array. In doing so, Suntech's own electrician commented that the first panel was installed incorrectly. *Id.* ¶ 47.

The solar array continued to malfunction even after the electrician's repairs.. *Id.* ¶ 48. The improper installation of the solar panels damaged Mr. Lopez's roof, causing it to leak and generate black mold in his home, including in rooms where

his children and grandchildren sleep. *Id.* ¶ 49.

Although the installation of the solar panels was supposed to reduce Mr. Lopez's electric utility bills, Mr. Lopez has never seen the reduction in his PPL bills he was promised. *Id.* ¶¶ 51, 54. Despite being promised to have a PPL bill of $18 per month, he continued receiving monthly electric bills of $300, $400, or $500 or more. *Id.* ¶ 52. When combined with the $683 monthly bill for the solar loan to Sunlight and its captive lender, Corning Federal Credit Union ("Corning"), Mr. Lopez's electricity costs are astronomical for this family on a fixed budget. *Id.* ¶ 53.

On or about March 15, 2022, Corning caused a UCC Financing Statement to be recorded with Luzerne County in its name. *Id.* ¶ 56. As a result, if Mr. Lopez wanted to sell his home, he would need to settle with Defendants first and pay them for their faulty product and hidden loan. *Id.* ¶ 57.

If Mr. Lopez had known or understood all the terms of this solar deal, which were hidden from him in a language he could not read, he never would have agreed to have the system installed. *Id.* ¶ 58.

### D. Defendants' integrated business model affords Sunlight the right to control the terms, manner, and means of the sales presentation.

At all times relevant, the salesman acted on behalf of and for the benefit of Defendants Corning and Sunlight, who could not complete the transaction without the involvement of the sales representative. *Id.* ¶ 16. In other words, Defendants have a symbiotic relationship that relies upon the sales agent who is the only face of the

companies during customer interactions. *Id.*

Sunlight supervises and monitors the conduct of partner companies and sales agents who sell its loan products on its behalf. *Id.* ¶ 15. Sunlight conducts underwriting, marketing, training to partner solar companies, servicing and collection of payments, compliance and "risk management services," and disclosures and presentation of loan documents to consumers. *Id.* ¶ 60(c).

Sunlight's loan is first introduced in a sales proposal created for each customer by the solar company. *Id.* ¶ 60(m). Sunlight offers software and templates for creating sales proposals. *Id.* ¶ 60(m). If the consumer agrees to purchase the system and finance with Sunlight, they sign a purchase agreement with the solar company. *Id.* ¶ 60(n). The sales representative will also input the customer's information into Sunlight's portal. *Id.* ¶ 60(n). Sunlight will preliminarily check qualifications for the loan and, if qualifications are met, email loan documents to the consumer. *Id.* ¶ 60(n).

Sunlight tells solar companies: "We provide financing to help your customers go solar. The way we provide that financing is by working with multiple capital providers … to provide that capital for you to sell those loans." *Id.* ¶ 60(a). Sunlight trains solar companies to tell consumers that its partner financial institutions are "providing the funds" for its loans. *Id.* ¶ 60(b).

Sunlight also coordinates between capital funders and solar companies,

approves and monitors solar companies they partner with, and reviews and processes loan applications. *Id.* ¶ 60(d). Sunlight also repurchases loans that failed underwriting standards, were taken out based on misrepresentation or omission, or were subject to repurchase by the capital funder from the loan's assignee. *Id.* ¶ 60(d).

Sunlight dictates the terms and methods for solar companies to market and sell its loans. *Id.* ¶ 60(e). Sunlight retained the right to control the manner and method of sales presentation of its solar loan products, including sales accomplished through its sales partner Suntech. *Id.* ¶ 13. Sunlight and Corning require sales agents acting on their behalf to view and sign documents electronically, and to do so in a certain manner specified by them. *Id.* ¶ 14.

Sunlight touts that its management has significant experience in selling residential solar-panel systems and designed its loan products to maximize sales. *Id.* ¶ 60(f). It claims its "streamlined online look … provides instant, at-the-kitchen table approvals, paperless underwriting and document generation, and online signing and submission procedures." *Id.* ¶ 60(f). It emphasizes the speed that it processes loan applications, stating they get approvals "while [the sales representative is] in the home" and has "no confirmation call to hold up the process." *Id.* ¶ 60(g).

As mentioned, Sunlight offers training to solar companies on how to market Sunlight loans, which includes videos instructing sales representatives about Sunlight loan features. *Id.* ¶ 60(j). Sunlight training instructs on how to sell

residential solar-panel systems and tells solar companies to "include [Sunlight's] financing options in" sales proposals. *Id.* ¶ 60(j). Sunlight tells solar companies to "GO forth and sell Sunlight loans!" *Id.*

### E. Sunlight's pattern and practice of fraud

As a matter of policy, Sunlight does not provide signed contract documents in paper format at the time of signing, nor does it provide copies in Spanish to ESP-speaking-only individuals. *Id.* ¶ 63. Sunlight enables this fraudulent and deceptive conduct through its corporate processes, which include electronic tools they provide to their sales agents, enabling their sales agents to, among other things, (a) acquire detailed information about the property owner before meeting with the property owner, (b) obtain and use the property owner's consumer credit report to qualify the potential customer, and (c) sign documents electronically with the tap of a button. *Id.* ¶ 64.

Sunlight is engaged in a pattern and practice of misrepresenting to consumers the very nature of the transaction, resulting in consumers unwittingly signing decades-long solar contracts, including loans, without their knowledge or consent. *Id.* ¶ 65. Despite ample notice of this problem, Sunlight has continued to allow and enable its sales agents to employ fraudulent or deceptive sales practices, and it intentionally turns a blind eye to the fraud committed by its salesmen. *Id.* ¶¶ 66–67.

### F.  Mr. Lopez cancels the transaction.

Defendants never provided Mr. Lopez with a notice of right to cancel in Spanish, the only language he understands. *Id.* ¶ 72. Before May 30, 2024, Mr. Lopez was never provided with printed copies of a notice of right to cancel. *Id.* ¶ 73.

On May 30, 2024, Mr. Lopez's counsel sent Defendants a notice that Mr. Lopez had cancelled the transactions. *Id.* ¶ 76. Sunlight responded to the letter, indicating it will not cancel the transaction. *Id.* ¶ 77.

### G. Damage to Mr. Lopez.

As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Mr. Lopez has suffered damages. *Id.* ¶ 82. Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Mr. Lopez becoming obligated to contracts he never legally saw or signed, including the 20-year loan and the installation agreement. *Id.* ¶ 83.

Mr. Lopez has suffered an ascertainable loss of money or property, including: a damaged roof burdened with defective solar panels, money expended to repair leaks and remediate mold caused by faulty installation, the benefit of his bargain in the form of eliminated electric bills to PPL that he never realized, damage from a lien that slanders his title and strips equity in his home, mental and emotional distress, worry, and aggravation as a result of Defendants' actions. *Id.* ¶ 84.

### III.    Procedural History

In November 2023, Plaintiff, acting *pro se*, filed this action against Suntech in the Cout of Common Pleas of Luzerne County, Pennsylvania. By stipulation, an Amended Complaint was filed adding new parties Corning and Sunlight. Corning thereafter removed the matter to this Court. Sunlight moved to dismiss the Amended Complaint. In response, Plaintiff filed the SAC. Sunlight again moved to dismiss.

### IV.    Statement of Questions Involved

Should this Court deny Sunlight's motion to dismiss because: (a) the facts alleged in the SAC specifying the fraudulent and deceptive conduct by Sunlight's sales agent satisfy the requirements of Fed. R. Civ. P. 9(b); (b) the sales agent's fraud in the execution renders the hidden integration clause void; and (c) Sunlight owed a statutory and common law duty to consumers like Mr. Lopez to, *inter alia*, provide him contract documents in Spanish?

### V.    ARGUMENT

#### A. Sunlight is on notice of the claims against them, as required by the pleading requirements of Federal Rule of Civil Procedure 9(b).

Sunlight argues that Plaintiff's common law fraud claim lacks "particularity" under Federal Rule of Civil Procedure 9(b), because the SAC purportedly does not plead facts demonstrating how Sunlight is responsible for the deceptive conduct and misrepresentations of its agent. ECF 17 at pp. 7–8. To the contrary, the allegations in the SAC clearly set forth that the sales agent was acting on behalf of Sunlight and

Sunlight's captive lender, Corning, who has not argued to the contrary.

Rule 9(b) requires that "[i]n alleging fraud or mistake, parties must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006)). At bottom, the complaint must contain "sufficient details to put the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Warner v. Vision Solar LLC*, No. 22-CV-5307, 2023 WL 4118348, at *5 (D.N.J. June 22, 2023) (*quoting Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Sunlight is on notice of the basis of the fraud claims against it, which are based in part on the conduct of the sales agent acting on Sunlight's behalf and for its benefit. The SAC is replete with allegations explaining the sales agent's affiliation with Sunlight, which controls the manner and means in which the sales agent markets the transaction. *See supra* § II.D; *see also* SAC ¶¶ 11–16. Sunlight may *disagree* that the sales agent was acting on its behalf, but the SAC plainly puts

Sunlight on notice of the facts describing its affiliation with, and control over, the sales agent.

Defendant's argument that it is not responsible for its sales agent's conduct clashes with longstanding principles of agency and public policy. "[W]hile generally principals are not liable for the torts of their independent contractors, the common law is littered with exceptions." *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1437 (3d Cir. 1994). The Supreme Court of Pennsylvania has explained that "a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them," where the wrongful conduct occurred within the scope of the agency relationship. *Aiello v. Ed Saxe Real Est., Inc.*, 499 A.2d 282, 285 (Pa. 1985).

Notably, "[t]his rule of liability is not based upon any presumed authority in the agent to do the acts, but on the ground of public policy, that it is more reasonable that when one of two innocent persons must suffer from the wrongful act of a third person, that the principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger." *Id.*

This rule is also predicated on the precept that a principal cannot

simultaneously benefit from the wrongful act and at the same time repudiate the agent's authority. *Id.* "He must take the benefit to be derived from the transaction subject to his agent's fraud." *Id.* at 285–86. To hold otherwise "would be contrary to natural justice and common honesty." *Id.* at 287.

Under these principles of agency, a sales agent can simultaneously be an employee for one company and an agent for another with respect to the same transaction. *See Kalins v. Com., State Real Est. Comm'n*, 500 A.2d 200, 205 (Pa. Cmwlth. 1985) (timeshare salesperson held to be agent of timeshare broker, thereby imputing salesperson's misrepresentations to timeshare broker even though salesperson was employed by separate company). Similarly, a contractor may be considered an agent if the principal retains the "right or authority to interfere or control." *Moon Area Sch. Dist. v. Garzony*, 560 A.2d 1361, 1367 (Pa. 1989). Conversely, "the characteristic of [a non-agent independent contractor] is that the person engaged in the work has the **exclusive control** of the manner of performing it, being responsible only for the result." *Id.* (emphasis added).

It cannot be said here that the sales agent retained "exclusive control" over the manner of selling Sunlight's loan product. Even Sunlight's Financing Program Agreement ("FPA") with Suntech establishes this, affording Sunlight the right to control sales agents' marketing of the loan products through their integrated business

14

model.[1] Under the FPA ¶ 9.3(a), Sunlight and Suntech agreed to "use commercially reasonable efforts to integrate their respective processes and technology platforms to facilitate Loan Applications and origination," and Sunlight retained the right to review all "technical integrations" impacting the platform. Relatedly, Sunlight retained the right to approve Suntech's form of contracts and related documentation, which must be "in a form satisfactory to Sunlight," FPA ¶ 9.2(a).

Significantly, Sunlight retained the right to control the content of marketing materials. FPA ¶ 8.1(a) ("All marketing materials referencing Sunlight, any Lender, the Program or the availability of Loans under the Program, including any promotional campaigns, shall be subject to the prior written approval of Sunlight[.]").

Sunlight also retained the right to require Suntech to "comply with any and all policies and procedures **mandated by any Lender or by Sunlight** for compliance with" state and federal consumer protection laws and regulations. FPA 8.1(c) (emphasis added). Sunlight has the right to audit Suntech's compliance with applicable law. FPA ¶ 9.2(h).

Suntech agreed train employees and third-party sales organizations in accordance with "all compliance training materials provided by Sunlight to [Suntech]." FPA ¶ 8.1(d). Sunlight agreed to "provide mandatory training sessions"

---

[1]    Sunlight attached the FPA as Appendix A to its Brief.

to Suntech's sales representatives "including training addressing product sales and marketing and potential legal compliance issues." FPA ¶ 9.1(a). Sunlight retained the right, "in its sole discretion," to force Suntech to "terminate" a sales organization's ability to market systems financed by loans through Sunlight. FPA ¶ 8.1(e). Sunlight also retained the right to reinstate a discontinued sales organization "in Sunlight's sole discretion." FPA ¶ 8.1(e).

Suntech is prohibited from selling non-Sunlight loan products to borrowers. FPA ¶ 9.2(s). Sunlight's loan product cannot be offered as a "second look" or second chance at financing after other financing has already been denied. FPA ¶ 9.2(v). All of these contractual provisions demonstrate that Sunlight has the right to exercise substantial control over the sales agent's process.

Sunlight cites *Grimmett* (Def.'s Br. at p. 9) but that case is readily distinguishable given the threadbare allegations of agency before that court. *See Grimmett v. Sunlight Fin. LLC*, No. 2:23-CV-00084, 2023 WL 6449447, at *7 (S.D.W. Va. Oct. 3, 2023) ("None of the facts alleged indicate that Sunlight controlled, or had the power to control, PowerHome's conduct."). The plaintiff there alleged Sunlight "exercises virtually no oversight" over the activities of the sales company, *id.*, which the court viewed as essentially an admission that Sunlight does not exercise any control over the sales company. Not so here. Even if Sunlight makes the ultimate lending decision, Sunlight relies on the sales agent on the ground to

accurately describe and market Sunlight's loan products to the consumer using marketing materials subject to Sunlight's prior approval. FPA ¶ 8.1(a).

It bears note that Sunlight's purported disclaimer of agency is of little to no import, as courts have recognized that such disclaimers do not control. *Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. 07-01257, 2007 WL 3349320, at *5 (D.N.J. Nov. 9, 2007) ("If courts routinely recognized disclaimers of agency, parties could conduct themselves as principal and agent without the legal ramifications that accompany that special relationship.").

Moreover, as agency is generally a question of fact for the jury, the Third Circuit has understandably endorsed the sensible approach of reserving matters of agency for discovery. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) (reversing dismissal, stating "we have held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack"). The case should proceed to discovery to confirm the allegations in the SAC.

### B. Plaintiff states a claim under the UTPCPL.

Sunlight next argues that Plaintiff fails to plead that Sunlight committed an unfair or deceptive act under the UTPCPL. (Def.'s Br. at p. 10). This argument is based on the same assumption as before—that Sunlight is somehow not responsible for the conduct of its sales agent whom Sunlight allowed to facilitate transactions on

17

its behalf. Plaintiff incorporates by reference his arguments made previously.

Sunlight additionally argues that Plaintiff could not have justifiably relied upon the salesman's representations because the contract contains an integration clause. (Def.'s Br. at pp. 12–13). This argument belies the facts in the SAC, which disavow Mr. Lopez being presented or having signed any documents. SAC ¶ 38. "Mr. Lopez was not shown any electronic contract documents or provisions, but was only shown a place where he could make his initial and sign his name." *Id.* ¶ 39. "Mr. Lopez signed the salesman's tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.* that solar would eliminate his electrical bill (save $18 for a connection charge) and he would only have a monthly payment toward the loan for the panels." *Id.* ¶ 40. In other words, "Defendants' salesman engaged in fraud in the execution, as he misrepresented the nature of what Mr. Lopez was agreeing to do in signing the computer tablet." *Id.* ¶ 43.

The Supreme Court has explained that an integration clause does not vitiate a party's justifiable reliance upon prior representations when there is "fraud in the execution"—*i.e.* "where a party alleges that he was mistaken as to the terms and the actual contents of the agreement he executed due to the other's fraud." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 206 (Pa. 2007). Because of Sunlight's fraud in the execution, the integration clause that Sunlight hid from Plaintiff does not bar his UTPCPL claim.

18

### C. Plaintiff states a claim for negligence.

Sunlight next argues that the SAC contains no facts establishing Sunlight had a non-contractual duty to Plaintiff. Def.'s Br. at p. 14. Again, this is belied by the SAC, which specifies Sunlight was "under a duty to exercise reasonable care in supervising and overseeing their employees and agents," as well as a "duty to provide a copy of the contracts to Plaintiff in Spanish." SAC ¶¶ 118, 121.

The former duty to exercise reasonable care "appropriately undergirds the vast expanse of tort claims in which a defendant's affirmative, risk-causing conduct is in issue." *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 14 (Pa. 2019). This means that "a party to a contract[,] by the very nature of his contractual undertaking[,] may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby." *Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006). In such situations, it "is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract." *Id.*

Here, Sunlight undertook a contractual duty to oversee and supervise Suntech's compliance with the law in marketing Sunlight's loan products. Under the FPA, Sunlight endeavored to "audit [Suntech's] compliance with Applicable Law . . . at least once per calendar year and at such additional times and in such form as

19

reasonably requested by Sunlight[.]" FPA ¶ 9.2(h). Sunlight also undertook to provide training to Suntech "and its sales representatives including training addressing product sales and marketing and potential legal compliance issues." FPA ¶ 9.2(b). Through these undertakings taken by Sunlight, the law imposes a duty on Sunlight to exercise reasonable care in the performance of these obligations for the benefit of third parties like Mr. Lopez.

As mentioned, Sunlight also had a statutory duty to provide a copy of the contract to Plaintiff in Spanish. The UTPCPL provides, "At the time of the sale or contract the buyer shall be provided with: (1) A fully completed receipt or copy of any contract pertaining to such sale, which is in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation[.]" 73 P.S. § 201-7(b)(1). Notably, the UTPCPL establishes a generalized duty that such contract must be provided contemporaneously with the sale. All Defendants were named on the loan agreement (Def.'s Appx. C), yet they all failed to comply with this statutory command to provide the contract in the same language as the oral sales presentation.

The allegations in the SAC, supplemented by the FPA, are more than sufficient to establish the common law and statutory duties breached by Sunlight.

## VI.  CONCLUSION

Sunlight seeks to reap financial benefits from (and refuses to cancel) the loan contract fraudulently procured by its sales agent, yet also attempts to disclaim all

responsibility for the sales agent's fraud. Principles of agency and public policy do not countenance such unfair commercial practices. Sunlight owed Mr. Lopez a duty to provide the contract in his spoken language, and to oversee its sales agents to prevent the deception it enabled. Sunlight breached these duties, and it may not now use an integration clause in a contract procured through fraud in the execution as a "get out of jail free" card to avoid accountability for the deception of its sales agent. Defendant's Motion to dismiss must be denied.

Date: <u>October 31, 2024</u>            <u>s/Jody T. López-Jacobs</u>
                                        CARY L. FLITTER
                                        ANDREW M. MILZ
                                        JODY THOMAS LOPEZ-JACOBS
                                        EDWARD M. FLITTER
                                        **FLITTER MILZ, PC**
                                        450 N. Narberth Avenue, Suite 101
                                        Narberth, PA  19072
                                        (610) 822-0782
                                        cflitter@consumerslaw.com
                                        amilz@consumerslaw.com
                                        jlopez-jacobs@consumerslaw.com
                                        eflitter@consumerslaw.com

                                        Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Date: <u>October 31, 2024</u>                    <u>*s/Jody T. López-Jacobs*        </u>
                                                        JODY THOMAS LÓPEZ-JACOBS


## **CERTIFICATE OF WORD COUNT**

I hereby certify that the number of words in the foregoing Memorandum in Opposition to Defendant Sunlight Financial, LLC's Motion to Dismiss Second Amended Complaint, excluding the captions, table of contents, table of authorities, certificates, and signature block, is 4,931, in compliance with the word-count limit of LR 7.8(b)(2).


Date: <u>October 31, 2024</u>                    <u>*s/Jody T. López-Jacobs*        </u>
                                                        JODY THOMAS LÓPEZ-JACOBS