IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE LOPEZ                                :
                                          :
                                          :
          Plaintiff,                      :    3:24-cv-01354
                                          :    (JUDGE MARIANI)
     v.                                   :
                                          :
NEW JERSEY SUN TECH, LLC,                 :
SUNLIGHT FINANCIAL LLC, and               :
CORNING CREDIT UNION                      :
                                          :
          Defendants.                     :

## MEMORANDUM OPINION

Presently before the Court is Defendant Sunlight Financial, LLC's ("Sunlight" or "Sunlight Financial") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 16). For the reasons that follow, Defendant's motion will be denied.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On November 8, 2023, Plaintiff Jose Lopez ("Plaintiff" or "Lopez"), appearing *pro se*, filed his original complaint in the Court of Common Pleas for Luzerne County. On June 27, 2024, Plaintiff filed an Amended Complaint. (Doc. 1-2). On August 12, 2024, Defendant Corning Credit Union timely removed the action to this Court. (Doc. 1). Plaintiff filed a Second Amended Complaint ("SAC") on September 20, 2024. (Doc. 14). In the SAC, Plaintiff alleges the following federal and state claims against Defendants: (1) declaratory

relief; (2) unfair trade practices; (3) slander of title; (4) fraud; (5) negligence; and (6) violation of the Truth in Lending Act. (Doc. 14 at 21-32).

On October 14, 2024, Defendant Sunlight moved to dismiss the SAC. (Doc. 16). Specifically, Sunlight seeks dismissal of the following Counts: (1) Count II alleging Unfair Trade Practices under Pennsylvania law; (2) Count IV alleging fraud; and (3) Count V alleging negligence. (Doc. 17). No other Defendant has moved to dismiss the claims set forth in the SAC.[1]

## II.    **STATEMENT OF FACTS**

The SAC alleges the following facts:

This action arises "out of an unconscionable and oppressive loan agreement to finance the installation of solar panels on a modest Wilkes-Barre home owned by Plaintiff Jose Lopez." (Doc. 14 at ¶ 1). Mr. Lopez cannot speak or read English and speaks Spanish only. (*Id.*). Defendant Sunlight, "working in tandem with door-to-door sales company Defendant SunTech and a finance partner Defendant Corning Credit Union, approached Mr. Lopez with a Spanish-language sales pitch, but then caused Mr. Lopez to enter into a solar system contract and loan agreement written in English Only." (*Id.* at ¶ 2). Plaintiff further alleges that this resulted in Lopez "not being properly informed about the details of the contracts, his rights or obligations under them, and that he had the right to cancel the contract within a three-day period as provided by law," including a law that

---

[1]    This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

requires contract documents to be provided to consumers "in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation." (*Id.*). The solar panels purchased by Lopez, "failed to operate properly, resulted in little to no offset of his utility bill as he was promised" and further caused damaged to Lopez's home. (*Id.* at ¶ 3). "When Mr. Lopez ultimately learned of his right to cancel the contracts and did cancel them, Defendants refused to accept the cancellation and continued to bill Mr. Lopez for installment payments." (*Id.*). To date, Lopez has yet to receive a copy of the allegedly fraudulent loan. (*Id.*).

Plaintiff is a sixty-nine-year-old consumer who only speaks Spanish and resides at his home in Wilkes-Barre. (*Id.* at ¶ 7). Defendant New Jersey Sun Tech LLC ("Sun Tech" or "NJ Sun Tech") is a foreign limited liability corporation registered to do business in Pennsylvania with a registered office in Hazelton, Pennsylvania. (*Id.* at ¶ 8). Defendant Sunlight Financial is a foreign limited liability corporation registered to do business in Pennsylvania with a registered agent in Harrisburg, Pennsylvania. (*Id.* at ¶ 9). Defendant Corning Credit Union ("Corning") is a federal credit union with branch offices in Pennsylvania, including in Chambersburg, Pennsylvania. (*Id.* at ¶ 10).

"On information and belief, Suntech, Sunlight, and Corning routinely acted together, and did so here, to sell and finance the sale of solar electric systems." (*Id.* at ¶ 11). Moreover, "Suntech, Sunlight, and Corning rely on sales agents acting on their behalf to obtain accurate information about and from the customer during the sales process." (*Id.* at

3

¶ 12). "On information and belief, at all times relevant, Sunlight retained the right to control the manner and method of sales presentation of its solar loan products, including sales accomplished through its sales partner Suntech." (*Id.* at ¶ 13).

The Defendants "require sales agents acting on its behalf, such as the salesperson here, to view and sign documents electronically, and to do so in a certain manner specified by Defendants." (*Id.* at ¶ 14). Both Defendant Sunlight and Defendant Corning "supervise and monitor the conduct of their partner companies and sales agents that sell their loan products on their behalf." (*Id.* at ¶ 15). "Defendant Suntech and the sales representative acted on behalf of and for the benefit of Corning and Sunlight, who could not complete the transaction without the involvement of the sales representatives. In other words, Defendants have a symbiotic relationship that relies upon the sales agent who is the only face of the companies when dealing with the consumer." (*Id.* at ¶ 16). Plaintiff further alleges that Defendants Corning and Sunlight "have ratified, approved of, and assumed responsibility for the conduct of the sales representative here, as Defendants continue to deem Mr. Lopez responsible under the contract documents at issue even though Defendants know that Mr. Lopez did not receive the contract documents in Spanish, and Defendants know that the subject contract documents are unenforceable." (*Id.* at ¶ 17).

Jose Lopez is a resident of Wilkes-Barre Pennsylvania, having moved there from the Dominican Republican over a decade ago. (*Id.* at ¶ 19). Lopez purchased his Wilkes-Barre property in 2017 and has resided there since then. (*Id.* at ¶ 20). He speaks Spanish only,

and cannot speak, read, or write in English. (*Id.* at ¶ 21). On or about August 2021, Christian Gonzales, "a door-to-door salesman working on behalf of all the Defendants, solicited Mr. Lopez at [his] property regarding the installation of solar panels." (*Id.* at ¶ 22). The Defendants' salesman conducted the entire sales pitch in Spanish. (*Id.* at ¶ 23). The salesman informed Mr. Lopez that purchasing a solar system "would result in elimination of his PPL electric bill, typically in the $400-600 range, and that Lopez would only need to pay PPL $18 a month for connection of the solar system." (*Id.* at ¶ 24). The salesmen further told Mr. Lopez "that if he allowed Defendants to install solar panels on their roof, there would be no cost to him and he would realize substantial savings on his electric utility costs," (*Id.* at ¶ 25), and that the solar system "should generate more electricity than he needed, resulting in him receiving a credit or cash payments towards his PPL electrical bill." (*Id.* at ¶ 26). "Those representations were false." (*Id.* at ¶ 27). Based on the salesmen representations, and reasonably relying on those representations, Mr. Lopez agreed to consider having the solar system installed." (*Id.* at ¶ 28). "Had Mr. Lopez known those representations were false, he never would have agreed to installation of the system." (*Id.* at ¶ 29).

Plaintiff further alleges that, despite speaking only Spanish, "all the contract documents associated with the sale, installation, and financing of the solar panels were in English." (*Id.* at ¶ 30). Lopez was never shown any contract documents in Spanish, nor was he given a paper contract in any language, Spanish or English. (*Id.* at ¶¶ 31-32).

Although Mr. Lopez asked for a copy of the contract documents in Spanish, and the salesman told Mr. Lopez that it would be provided, to date, "Mr. Lopez has not received a Spanish-language copy of the contract." (*Id.* at ¶ 33). Lopez was further never informed about, nor given, a copy of an "Notice of Right to Cancel" in Spanish. (*Id.* at ¶ 34). And Lopez was never told about nor given any of the contract documents mentioning arbitration in Spanish. (*Id.* at ¶ 35). "Had Mr. Lopez been provided with contract documents in Spanish, where he could see the true terms and costs, he would never have agreed to installation of the system." (*Id.* at ¶ 36).

At the time of the sale, the salesmen presented Lopez with a computer tablet. (*Id.* at ¶ 37). "There were no paper documents presented, signed, or exchanged, and the computer tablet did not depict any contractual terms." (*Id.* at ¶ 38). Mr. Lopez "was not shown any electronic contract documents or provisions, but was only shown a place where he could make his initial and sign his name." (*Id.* at ¶ 39). "Mr. Lopez signed the salesman's tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.*, that solar would eliminate his electrical bill (save $18 for a connection charge) and he would only have a monthly payment towards the loan for the panels." (*Id.* at ¶ 40). Upon information and belief, Defendants emailed contract documents in English only to Plaintiff's son, not Plaintiff, who also only speaks and reads in Spanish. (*Id.* at ¶¶ 41-42). Plaintiff further alleges, upon information and belief, that "Defendants' salesman engaged in

6

fraud in the execution, as he misrepresented the nature of what Mr. Lopez was agreeing to do in signing the computer tablet." (*Id.* at ¶ 43).

Defendant NJ Sun Tech subsequently "installed photovoltaic panels and related equipment" on Plaintiff's property and connected them to his electrical service on or about February 2022. (*Id.* at ¶ 44). Shortly after the installation, the panels stopped working. (*Id.* at ¶ 45). On or about August 2023, "the utility panel for the solar array that was installed by Suntech in Mr. Lopez's basement caught fire and was destroyed." (*Id.* at ¶ 46). "Suntech sent an electrician to install a second utility panel and hook the solar array up to that. In doing so, Suntech's own electrician commented that the first panel was installed incorrectly during the first installation." (*Id.* at ¶ 47).

After making the repair, the solar array continued not to function properly. (*Id.* at ¶ 48). In addition, the installation of the solar panels damaged Lopez's roof, "causing it to leak and generate black mold in his home, including in rooms where his children and grandchildren sleep." (*Id.* at ¶ 49). "Mr. Lopez has had to expend at least six hours of work, $60-70 in paint and supplies, and additional money on a dehumidifier to rectify this." (*Id.* at ¶ 50). And Lopez "has never seen the reduction in PPL bills that he was promised." (*Id.* at ¶ 51). According to Plaintiff, despite being promised to have a PPL bill of $18 per month, Lopez "routinely still received bills of $300, $400, or $500 or more for his monthly electric bill." (*Id.* at ¶ 52). "When combined with the $683 monthly bill for the solar loan to Sunlight and Corning, Mr. Lopez's electricity costs are astronomical for this family on a fixed budget."

(*Id.* at ¶ 53). Although the installation of the solar panels "was supposed to reduce Mr. Lopez's electric utility bills, it did not. Moreover, the net cost of his electric service increased drastically after the installation of the panels due to the cost of the monthly loan payments due to Sunlight/Corning." (*Id.* at ¶ 54). Plaintiff further alleges that the economics of the above-referenced transaction "are so one-sided as to benefit the Defendants that the entire transaction is permeated with commercial unconscionability." (*Id.* at ¶ 55).

On or about March 15, 2022, Defendant Corning "caused a UCC Financing Statement to be recorded with Luzerne County." (*Id.* at ¶ 56). "As a result of the lien, if Mr. Lopez wanted to sell his home, he would need to settle with Defendants first and pay them for their faulty product and hidden loan." (*Id.* at ¶ 57). "If Mr. Lopez had known or understood all the terms of this solar deal, which were hidden from him in a language he could not read, he never would have agreed to have the system installed." (*Id.* at ¶ 58).

On or about March 8, 2024, the Attorney General of the State of Minnesota sued Sunlight for fraudulent sales conduct. (*Id.* at ¶ 59). In that complaint, the Attorney General for the State of Minnesota made the following factual statements related to the agency relationship between Minnesota solar companies (solar sales and installation), Sunlight (solar funding), and certain financial institutions (the capital funding source):

- Sunlight Financial tells solar companies: "We provided financing to help your customers go solar. The way we provided financing is by working with multiple capital providers . . . to provide that capital for you to sell those loans." (*Id.* at ¶ 60(a)).

- Sunlight Financial trains solar companies to tell consumers the financial institutions that it partners with are "providing the funds" for its loans. (*Id.* at ¶ 60(b)).

- Under contracts with its capital funders, Sunlight Financial conducts underwriting, marketing, training to partner solar companies, servicing and collection of payments, compliance and "risk management services," and disclosures and presentation of loan documents to consumers. (*Id.* at ¶ 60(c)).

- Sunlight Financial also coordinates between capital funders and solar companies, approves and monitors solar companies they partner with, and reviews and processes loan applications. Sunlight Financial also repurchases loans that failed underwriting standards, were taken out based on misrepresentation or omission, or were subject to repurchase by the capital funder from the loan's assignee. (*Id.* at ¶ 60(d)).

- Sunlight Financial dictates the terms and methods for solar companies to market and sell its loans. (*Id.* at ¶ 60(e)).

- Sunlight Financial touts that its management has significant experience in selling residential solar-panel systems and designed its loan products to maximize sales. It claims that its "streamlined online look . . . provides instant, at-the-kitchen table approvals, paperless underwriting and document generation, and online signing and submission procedures." (*Id.* at ¶ 60(f)).

- It emphasizes the speed that it processes loan applications, stating they get approvals "while [the sales representative is] in the home" and has "no confirmation call to hold up the process." (*Id.* at ¶ 60(g)).

- Sunlight Financial administers and disburses funds to pay for financed systems, provides training, and is "responsible for the compliance" of loan documents. (*Id.* at ¶ 60(h)).

- The capital funder generally pays money into an account administered by Sunlight Financial, with Sunlight Financial acting as paying agent on a given loan and disbursing the funds to the solar company. Sunlight Financial will

also make advances to the solar company before installation is complete. (*Id.* at ¶ 60(i)).

- Sunlight Financial offers training to solar companies on how to market Sunlight Financial loans. This includes videos that instruct sales representatives about Sunlight Financial loan features. Sunlight Financial training instructs on how to sell residential solar-panel systems and tells solar companies to "include [Sunlight Financial's] financing options in" sales proposals. Sunlight Financial tells solar companies to "GO forth and sell Sunlight loans!" (*Id.* at ¶ 60(j)).

- Sunlight Financial also emphasizes fast approvals during sales visit with consumers. For example, it promotes that it will approve customers "at point of sale" and allow sellers to "ma[k]e deals quick + hassle free." (*Id.* at ¶ 60(k)).

- Sunlight Financial also has a "Sunlight Rewards" program that provides sales representatives that meet sales targets for Sunlight Financial loans with vacations, applications, furniture, and vehicles. As stated in one training, "[Y]ou can get reward points in prizes simply for . . . selling Sunlight." (*Id.* at ¶ 60(l)).

- Sunlight Financial's loan is first introduced in a sales proposal created for each customer by the solar company. Sunlight Financial offers software and templates for creating sales proposals. Generally, the sales proposal presented by the solar company includes slides identifying payment for the system via a Sunlight Financial loan and emphasizes a low interest rate and low monthly payments that will be offset by utility saving." (*Id.* at ¶ 60(m)).

- If the consumer agrees to purchase the system and finance with Sunlight Financial, they sign a purchase agreement with the solar company. The sales representative will also input the customer's information into Sunlight Financial's portal. Sunlight Financial will preliminary check qualifications for the loan and, if qualifications are met, emails loan documents to the consumer. (*Id.* at ¶ 60(n)).

- The consumer then executes loan documents with the sales representative either on the representative's tablet or on the consumer's own device. As part of this process and pursuant to agreements with the solar company and capital funder, Sunlight Financial is responsible for representing loan terms

and complying with consumer-lending laws (subject to review by capital funders). (*Id.* at ¶ 60(o)).

- The largest cost to the consumer charged by Sunlight Financial as part of the loan is its upfront fee imposed at the time of origination and added to the principal balance. Sunlight Financial's fee is something labeled internally as its "OID" or "Original Issue Discount." (*Id.* at ¶ 60(p)).

- The fee is not calculated as part of the "finance charge" or APR disclosed to consumers as the cost of financing in loan documents or the APR identified in sales proposals and other communications to consumer. (*Id.* at ¶ 60(q)).

- Sunlight Financial further confirms in their training with solar companies that the upfront fee is added to and included in the financed sale price charged by the solar company. As stated in one training, "When you guys are quoting your customer, you are already building in the dealer fee that goes through your company. So when you're quoting your customer on these payments, when you're putting that loan amount, you're assuming the . . . dealer fee." (*Id.* at ¶ 60(r)).

- Sunlight Financial's upfront fee is nowhere identified in marketing materials or loan documents and is not included in the calculation of the "finance charge" or "annual percentage rate" disclosed to borrowers. (*Id.* at ¶ 60(s)).

"Upon information and belief, all the aspects of Sunlight's program as [it] relates to

Minnesota solar companies, applies with equal force to Suntech (solar company) and

Corning (capital funder) at the time of the sale to Mr. Lopez." (*Id.* at ¶ 61).

Upon information and belief, the Defendants, "as a matter of policy, do not provide

signed contract documents in paper format at the time of signing, nor do they provide copies

in Spanish to ESP-speaking-only individuals." (*Id.* at ¶ 63). Plaintiff further alleges that:

Defendant Sunlight and Corning enable this fraudulent and deceptive conduct through its corporate process, which include electronic tools that they provide to their sales agent, enabling their sales agents to, among other things, (a) acquire detailed

> information about the property owner before meeting with the property owner, (b)
> obtain and use the property owner's consumer credit report to qualify that potential
> customer, and (c) sign documents electronically with the tap of a button.

(*Id.* at ¶ 64).

Upon information and belief, "Defendants have a pattern and practice of misrepresenting to

consumers the very nature of the transaction, resulting in consumers unwittingly signing

decades-long solar contracts, including loans, without their knowledge or consent." (*Id.* at ¶

65). "Despite ample notice of this problem, Defendants continued to allow and enable their

sales agents to employ fraudulent or deceptive sales practices," (*Id.* at ¶ 66), and further

"intentionally turn a blind eye to the fraud committed by their sales agents." (*Id.* at ¶ 67).

Pursuant to the Pennsylvania Unfair Trade Practice and Consumer Protection Law

("UTPCPL"), 73 P.S. § 201-7, the Defendants were required to provided Lopez with the

notice of his right to cancel his transactions "within three full business days following the day

of the transaction." (*Id.* at ¶ 68). Under 73 P.S. § 201-7(b), the Notice must clearly and

conspicuously state: "You, the buyer, may cancel this transaction at any time prior to

midnight of the third business day after the date of this transaction. See the attached notice

of cancellation form for an explanation of that right." (*Id.* at ¶ 70). This law further provides

that "[a] fully completed receipt or copy of any contract pertaining to such sale, which is in

the same language (Spanish, English, etc.) as that principally used in the oral sales

presentation, and also in English." (*Id.* at ¶ 71). However, "Defendants never provided Mr.

Lopez with a notice that complied with the above-referenced requirements, as he never got a notice in Spanish, the only language he understands." (*Id.* at ¶ 72).

Before May 30, 2024, Lopez was never provided with a printed copies of a notice of his right to cancel. (*Id.* at ¶ 73). Pursuant to 73 P.S. § 201-7(e), "[t]he cancellation period provided for in this section shall not being to run until buyer has been informed of his right to cancel and has provided with copies of the 'Notice of Cancellation.'" (*Id.* at ¶ 74). "Because the requisite notices had not be provided as of May 30, 2024, the three-day rescission period had not begun to run, and Mr. Lopez retained the right to rescind the transaction." (*Id.* at ¶ 75).

On May 30, 2024, counsel for Plaintiff sent Defendants a notice that Mr. Lopez had cancelled the transaction. (*Id.* at ¶ 76). Sunlight responded to the letter, stating that it will not cancel the transaction. (*Id.* at ¶ 77). "None of the Defendants ever notified Mr. Lopez or counsel that they intended to repossess or abandon any shipped or delivered goods." (*Id.* at ¶ 78). Pursuant to 73 P.S. § 201-7(i), "by failing to respond to the notice within ten days and by failing to repossess the goods within 20 days, Defendants forfeited all rights to the goods, including the solar panels and associated equipment and the proceeds of the loan. (*Id.* at ¶ 79). Plaintiff alleges that although Lopez "validly cancelled the purported contract with Defendants," (*Id.* at ¶ 80), the Defendants nonetheless continue to demand payments from Lopez. (*Id.* at ¶ 81).

As a result of Defendants' "willful, wanton reckless, and/or negligent actions, Mr. Lopez has been damaged." (*Id.* at ¶ 82). Defendants' conduct "has resulted in Mr. Lopez becoming obligated on contracts he never legally saw or signed, including the 20-year loan and the installation agreement." (*Id.* at ¶ 83). Specifically:

> Mr. Lopez has suffered an ascertainable loss of money or property, including: a damaged roof burdened with defective solar panels, money expended to repair leaks and mold caused by the faulty installation, the benefit of his bargain in the form of eliminated electric bills to PPL that he never realized, damage from the lien that slanders his title and strips equity in his home, mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

(*Id.* at ¶ 84).

## III.    STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations

in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707

F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted).

Thus, "the presumption of truth attaches only to those allegations for which there is

sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President*

*of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S.

at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same

presumption." *Id.*

  "Although the plausibility standard 'does not impose a probability requirement,' it

does require a pleading to show 'more than a sheer possibility that a defendant has acted

unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at

678). "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting

*Iqbal,* 556 U.S. 679).

## IV. <u>ANALYSIS</u>

  Defendant Sunlight Financial seeks dismissal of certain counts in the SAC. More

specifically, Sunlight seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of

Count II, Count IV, and Count V. [2] (Doc. 16). Underlying Sunlight's motion to dismiss is the notion that Sunlight cannot be held responsible for the actions of NJ Sun Tech and its salespersons. Put differently, Sunlight seeks dismissal of the SAC because Plaintiff failed to plead any facts plausibly establishing an agency relationship between Sunlight (as principal) and NJ Sun Tech and its salesperson (as agents).

### A. Agency

According to Sunlight, "[n]one of Plaintiff's causes of action states a claim against Sunlight. Each claim relies on allegations of either Sun Tech's or Corning's conduct. Since Plaintiff has pleaded no facts to suggest that Sunlight could be held liable for the other Defendants' acts, all these claims fail under Rule 12(b)(6)." (Doc. 17 at 11). Plaintiff, in contrast, asserts that Sunlight's motion must be denied because it has plausibly pleaded factual content giving rise to the inference that NJ Sun Tech and its salespersons were acting as agents of Sunlight Financial.

"The three basic elements of agency in Pennsylvania are: 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of that undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *First United Bank & Tr. v. PNC Fin. Servs. Grp., Inc.*, 667 F. Supp. 2d 443, 459 (M.D. Pa. 2009) (quoting *Basile v. H & R Block, Inc.*, 563 Pa. 359, 761 A.2d 1115, 1120 (2000)). "Agency is

---

[2]     In its motion, Sunlight asks this Court to dismiss all counts against it. (Doc. 16, Doc 17 at 11). However, Sunlight makes no argument in its brief in support of dismissal Plaintiff's Declaratory Judgment claim in Count I. *See* (Doc. 17). Accordingly, the Court will not dismiss Count I against Sunlight.

typically of a question of fact, and when asserting agency one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agency existed." *Id.* (internal citation and quotation marks omitted).

"Under Pennsylvania law, the liability of a principal to third parties for the acts of its agent can be established based on either (1) express authority, or that which is directly granted; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted; (3) apparently authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel." *UPMC v. CBIZ, Inc.*, 436 F. Supp. 3d 822, 843 (W.D. Pa. 2020) (internal citation and quotation marks omitted). "For the purposes of surviving a motion to dismiss, a plaintiff does not need to have extensive proof of the exact nature of agency relationships.  Pennsylvania courts 'have held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack.'" *Troyan v. Ruggiero*, Civil Action No. 15-cv-2832, 2015 WL 13856710, at *4 (E.D. Pa. Oct. 30, 2015) (quoting *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x 803, 808 (3d Cir. 2003)).

Indeed, it is well-settled that "[t]he determination of whether a person is an agent is usually a question of fact." *Glah v. Massachusetts Mut. Life Ins. Co.*, No. Civ. A. 03-2407, 2003 WL 22872037, at *4 (E.D. Pa. Dec. 3, 2003); *see also S.K.A. Steel Trading, Inc. v. Penn Terminals, Inc.*, No. Civ. A. 96-CV-4687, 1998 WL 967587, at *3 (E.D. Pa. Oct. 13,

1998) ("It is well settled under Pennsylvania law that whether an agency relationship exists is a question of fact and the party asserting the relationship has the burden of proving it by a fair preponderance of the evidence."). "Whether the alleged authority is actual, apparent, or otherwise, the element of control is the touchstone of a principal-agent relationship." *Rantnetwork, Inc. v. Underwood*, Civil Action No. 4:11-CV-1283, 2012 WL 1021326, at *5 (M.D. Pa. Mar. 26, 2012) (internal citation and quotation marks omitted).

Here, a review of Plaintiff's SAC leads to the conclusion that Plaintiff plausibly alleges a principal-agent relationship between Sunlight (as principal) and NJ Sun Tech and its salespersons as agents of Sunlight. Specifically, Plaintiff has pleaded sufficient plausibly factual content giving rise to an inference of a principal-agent relationship based on control. In other words, Plaintiff has plausibly alleged an agency relationship based on a master/servant relationship under Pennsylvania law.[3] This conclusion does not foreclose Plaintiff from establishing a different kind of agency relationship, should discovery so reveal.

In addition to Plaintiff's citation to the Minnesota Attorney General's complaint against Sunlight Financial, (Doc. 14 at 11-17), which plausibly demonstrates Sunlight's control over the Minnesota solar companies, Plaintiff alleges the following facts regarding Sunlight's right to exercise substantial control over NJ Sun Tech and its salespersons:

---

[3]     "A master is a species of principal, and a servant is a species of agent. A master is a principal who employes an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is an agent employed by a master to perform services in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476, 481 (1970) (internal citation and quotation marks omitted).

- Under Sunlight's Financing Program Agreement ("FPA"), Sunlight is afforded the right to control sales agents' marketing of the loan products through their integrated business model. (Doc. 21 at 18-19).

- Under the FPA ¶ 9.3(a), Sunlight and Sun Tech agreed to "use commercially reasonable efforts to integrate their respective processes and technology platforms to facilitate Loan Applications and origination," and Sunlight retained the right to review all "technical integrations" impacting the platform. Relatedly, under FPA ¶ 9.2(a), Sunlight retained the right to approve Sun Tech's form contracts and related documentation, which must be in "in a form satisfactory to Sunlight." (*Id.* at 19)

- Sunlight retained the right to control the content of marketing materials. FPA ¶ 8.1(a) ("All marketing material referencing Sunlight, any Lender, the Program or the availability of Loans under the Program, including any promotional campaigns, shall be subject to the prior written approval of Sunlight."). (*Id.*)

- Sunlight retained the right to require Sun Tech to "comply with any and all policies and procedures mandated by any Lender or by Sunlight for compliance with" state and federal consumer protection laws and regulations. FPA ¶ 8.1(c). Sunlight further has the right to audit Suntech's compliance with applicable law. FPA ¶ 9.2(h). (*Id.*).

- Sun Tech agreed to train its employees and third-party sales organizations in accordance with "all compliance training materials provided by Sunlight to [Sun Tech]. FPA ¶ 8.1(d). Sunlight further agreed to "provide mandatory training sessions" to Sun Tech's sales representatives, "including training addressing product sales and marketing and potential legal compliance issues." FPA ¶ 9.1(a). (*Id.* at 19-20).

- Sunlight retained the right, "in its sole discretion," to force Sun Tech to "terminate" a sales organization's ability to market systems financed by loans through Sunlight. FPA ¶ 8.1(e). Sunlight also retained the right to reinstate a discontinued sales organization "in Sunlight's sole discretion." (*Id.* at 20).

- Sun Tech is prohibited from selling non-Sunlight loan products to borrowers. FPA ¶ 9.2(s). Sunlight's loan product cannot be offered as a "second look" or

second chance at financing after other financing has already been denied. FPA ¶ 9.2(v).  (*Id.*)

- According to Plaintiff, "[a]ll of these contractual provisions demonstrate that Sunlight has the right to exercise substantial control over the sales agent's process." (*Id.*).

As discussed, whether an agency relationship exists between Sunlight Financial and NJ Sun Tech and its salesperson is a question of fact.  Viewing the facts alleged in the light most favorable to the Plaintiff, as it must, Plaintiff has pleaded sufficiently plausible factual content giving rise to the inference that Sunlight controlled NJ Sun Tech and its salespersons, thus giving rise to a principal-agent relationship under Pennsylvania law.  *See First United Bank & Tr.*, 667 F. Supp. 2d at 459 ("Considering the allegations in the complaint, particularly those discussed above that relate to Sterling's control and participation in the alleged transactions and fraud, the Court finds that an agency relationship is sufficiently alleged to survive under *Twombly*."); *see also Glover v. Tacony Acad. Charter Sch.*, Civil Action No. 18-56, 2018 WL 4712842, at *5 (E.D. Pa. Nov. 1, 2018) ("Still, the Complaint contains sufficient allegations to make it plausible that a principal-agent relationship existed.").  Sunlight's argument that Plaintiff's allegations concerning agency are conclusory and should be disregarded is simply incorrect.[4]  Because the Court's

---

[4]  In addition, although Sunlight points to the Program Agreement between Sunlight and NJ Sun Tech, which specifically disclaims an agency relationship between Sunlight and NJ Sun Tech, such clauses are not dispositive, especially at the motion to dismiss stage.  *See Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 547 (W.D. Pa. 2009) ("Express disclaimers of agency do not necessarily negate the existence of the agency relationship.") (citing *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 652 (3d. Cir. 1998)).

conclusion that Plaintiff has plausibly alleged an agency relationship between Sunlight

Financial and NJ Sun Tech and its salesperson will affect each of the Counts Sunlight seeks

to dismiss, the Court will address each Count in turn.

### B. Unfair Trade Practices & Consumer Protection Law

Defendant Sunlight Financial seeks dismissal of Plaintiff's claim in Count II brought

under the Pennsylvania UTPCPL. Sunlight seeks dismissal of this claim on the theory that

Plaintiff failed to plead that Sunlight committed a fraudulent or deceptive act. (Doc. 17 at

14-17). As discussed, however, the Court finds that Plaintiff has plausibly alleged an

agency relationship between Sunlight and NJ Sun Tech such that the conduct of NJ Sun

Tech's salesperson may be attributed to Sunlight. *See De Oca v. Beato*, Civil No. 3:17-CV-

837, 2018 WL 3371920, at *5 (M.D. Pa. June 6, 2018) ("In the past, courts have been

reluctant to dismiss UTPCPL claims on the pleadings alone based upon sweeping defense

assertions that this statute does not embrace principal-agent liability. . . . Instead, the

preferred practice has been to allow discovery to determine the nature and extent of any

principal-agent relationship."). Moreover, Plaintiff has sufficiently alleged fraudulent or

deceptive acts on the part of NJ Sun Tech's salesperson. *See* (Doc. 14 at ¶¶ 24-29, 39-43,

63-66, 95). In addition, Sunlight Financial seeks dismissal of Plaintiff's UTPCPL claim

because he cannot demonstrate justifiable reliance.

The UTPCPL, 73 Pa. Stat. § 201-1, *et seq.*, "is a remedy for individual consumers

who have been wronged by unfair trade practices, so its provisions should be liberally

construed to protect consumers." *Fike v. Global Pharma Healthcare Priv., LTD.*, __ F. Supp. 3d __, 2024 WL 3460114, at *8 (E.D. Pa. July 18, 2024). "To survive a motion dismiss, a UTPCPL claim requires: (1) the defendant's unfair practices, (2) an ascertainable loss that the defendant's unfair practices caused, and (3) facts which suggest the plaintiff's reliance on the defendant was justifiable." *Id.* To bring a claim of fraud under the UTPCPL, Pennsylvania state court precedent requires Plaintiffs to meet the elements of common law fraud." *Schwartz v. Lawyers Title Ins. Co.*, 680 F. Supp. 2d 690, 713 (E.D. Pa. 2010). "Under Pennsylvania law, common law fraud requires: (1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury was proximately caused by the reliance." *Id.* (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005)).

"To succeed on a claim under the UTPCPL's catch-all provision, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 548 (E.D. Pa. 2012) (internal citation and quotation marks omitted). "Deceptive conduct under the catch-all provision is defined as an intentional misleading by falsehood spoken or acted. An act or practice is deceptive of unfair if it has the capacity or tendency to deceive." *Id.* (internal citation and quotation marks omitted). "Whether a plaintiff's reliance was justifiable is typically a question for the fact-finder to decide and

requires consideration of the parties, their relationship, and the circumstances surrounding the their transaction." *Id.* at 548-49 (internal citation and quotation marks omitted).

Defendant argues that Plaintiff could not justifiably rely on NJ's Sun Tech's salesman's misrepresentations because the contract governing the parties' relationships contains an integration clause. (Doc. 17 at 16-17). Plaintiff disputes this claim, and notes he alleges fraud in the execution of the contract because NJ Sun Tech's salesperson "misrepresented the nature of what Mr. Lopez was agreeing to do in signing the computer tablet." (Doc. 14 at ¶ 43). Plaintiff further alleges that he was never shown any electronic documents or provisions but was only shown a place where he could make his initials and sign his name. (*Id.* at ¶ 39). Plaintiff further claim that "Mr. Lopez signed the salesman's tablet agreeing only to the installation of solar panels under the terms presented to him, *i.e.*, that solar would eliminate his electrical bill . . . and he would only have a monthly payment toward the loan for the panels." (*Id.* at ¶ 40).

"An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all the parties' negotiations, conversations, and agreements made prior to execution." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 579 Pa. 479, 498, 854 A.2d 425 (2004). However, the Pennsylvania Supreme Court's has found that an integration clause does not automatically overcome a party's justifiable reliance upon prior representations where, as here, the plaintiff alleges "fraud in the execution" of the contract. *Toy v. Metro.*

*Life Ins. Co.*, 593 Pa. 20, 51-53, 928 A.2d 186 (2007). And as discussed, "Pennsylvania's Supreme Court has ruled that the UTPCPL should be interpreted in the broadest possible way to protect consumers in the marketplace." *Sarsfield v. Citimortgage*, *Inc.*, 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010) (citing *Commonwealth v. Monumental Props.*, *Inc.*, 459 Pa. 450, 329 A.2d 812, 817 (1974)).

In this matter, the Court finds that, at this early stage of the proceeding, Plaintiff has plausibly alleged facts demonstrating justifiable reliance and further established a fraudulent or deceptive act by plausibly alleging an agency relationship between Sunlight (as principal) and NJ Sun Tech and its salesman (as agents) that may be attributed to Sunlight. *See Dolan v. PHL Variable Ins. Co.*, Civil Action No. 3:15-CV-01987, 2018 WL 1696650, at *7 (M.D. Pa. Apr. 6, 2018) ("At this stage of the litigation, such allegations are sufficient. Further, justifiable reliance is generally a question of fact not typically decided upon a motion to dismiss."). Accordingly, Sunlight's motion to dismiss Plaintiff's UTPCPL claim alleged in Count II will be denied.

## C. Fraud

Defendant Sunlight seeks dismissal of Plaintiff's fraud claim alleged in Count IV for failure to comply with Federal Rule of Civil Procedure 9(b). (Doc. 17 at 11-14). Sunlight further seeks dismissal of this claim on the theory that it cannot be held liable for the alleged fraudulently conduct of Defendant NJ Sun Tech's representative. (*Id.*). According to Sunlight, "there is not a single allegation specifying who from Sunlight made any

representation or how Sun Tech's actions are imputed to Sunlight, this claim fails as to

Sunlight for lack of particularity." (Doc. 17 at 13). In contrast, Plaintiff claims that "the

allegations in the SAC clearly set forth that the sales agent was acting on behalf of Sunlight

and Sunlight's captive lender, Corning, who has not argued to the contrary." (Doc. 21 at 15-

16). As discussed above, the Court agrees with Plaintiff that he has plausibly alleged facts

giving rise to the inference that NJ Sun Tech's salesperson was acting as an agent of

Sunlight. This, however, does not end the inquiry regarding Plaintiff's fraud claim.

To state a claim for fraud in Pennsylvania, a plaintiff must plausibly plead six

elements: (1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with

the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury

was proximately caused by the reliance. *Santana Prods., Inc.*, 401 F.3d at 136. In addition,

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud must be pled with

particularity. "The purpose of Rule 9(b) is to provide notice, not the test the factual

allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus P.C.*,

331 F.3d 406, 414 n.2 (3d Cir. 2003). "Rule 9(b) may be satisfied by describing the

circumstances of the alleged fraud with precise allegations of date, time, or place, or by

using some means of injecting precision and some measure of substantial into the

allegations of fraud." *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 310 (E.D. Pa. 2020)

(internal citation and quotation marks omitted). "Stated differently, the plaintiff must plead

the who, what, when, where, and how of the fraud." *Id.* (internal citation and quotation marks omitted).

Although Sunlight claims that Plaintiff fails to allege fraud with particularity, as required by Rule 9(b), the Court disagrees. A review of Plaintiff's SAC provides sufficient notice to Sunlight regarding the who, what, when, where, and how of the alleged fraudulent transactions. *See Zahm & Matson, Inc. v. Kenneth Challene*, Civil Action No. 14-155E, 2015 WL 1650944, at *4 (W.D. Pa. Apr. 14, 2015) ("In short, the Second Amended Complaint alleges the 'who, what, when, and where' of the transfer at issue. Given that Defendant was a party to each of the transfers at issue, which, again, are all detailed in the Second Amended Complaint, he has been provided more than sufficient notice of the claim against him. As such, the Court believes Z & M's Second Amended Complaint meets Rule 9(b)'s requirements."). The allegation contained in the SAC provides Sunlight Financial with more than sufficient notices of the claims against it. Specifically, Plaintiff alleges: (1) the who—NJ Sun Tech's salesperson acting as an agent and on behalf of Sunlight; (2) the what—a detailed description of the alleged fraudulent conduct set forth in the SAC as described above; (3) the when—by identifying specific dates of the alleged fraudulent conduct in August 2021; (4) the where—at Mr. Lopez's home in Wilkes-Barre; and (5) the how of the alleged fraudulent conduct. *See generally* (Doc. 14).

Moreover, the Court is cognizant that it must be sensitive to the application of Rule 9(b) prior to discovery because certain facts are likely to be within Sunlight's control, and

26

dismissing Plaintiff's claim at this stage of the proceeding may permit sophisticated

defendants to successful conceal the details of its fraud.  *See Craftmatic Sec. Litig. v.*

*Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Courts must be sensitive to the fact that

application of Rule 9(b) prior to discovery may permit sophisticated defrauders to

successfully conceal the details of their fraud.") (internal citation and quotation marks

omitted); *see also Dolan*, 2018 WL 1696650, at *4 ("While I acknowledge some of the flaws

identified with the First Amended Complaint remain uncorrected, I must be cognizant of the

fact that Rule 9 does not require Plaintiffs to allege facts that are not within their control and

would only be uncovered during discovery."); *United Prods. Corp. v. Admiral Tool & Mfg.*

*Co.*, 122 F. Supp. 2d 560, 566 (E.D. Pa. 2000) ("Moreover, despite Rule 9(b)'s heightened

pleading requirement, courts should be sensitive to its application prior to discovery, and the

Rule may be relaxed somewhat when the factual information is peculiarly within the

defendant's knowledge or control.") (internal citation and quotation marks omitted).

Because Plaintiff has pleaded facts with particularity by establishing the "who, what, when,

where, and how" concerning Sunlight's alleged fraudulent conduct through its alleged

agents, Sunlight's motion to dismiss Plaintiff's fraud claim alleged in Count IV will be denied.

### D. Negligence

Defendant Sunlight also move to dismiss Count V alleging negligence.  Specifically,

Defendant Sunlight seeks dismissal of Count V on the theory that Plaintiff's negligence

claim fails as a matter of law because Sunlight did not owe a duty beyond its contractual

obligations. (Doc. 17 at 17-19). Plaintiff opposes Sunlight's motion, arguing that the SAC

alleges that Sunlight "was under a duty to exercise reasonable care in supervising and

overseeing their employees and agents," as well as a statutory duty "to provide a copy of

the contracts to Plaintiff in Spanish." (Doc. 21 at 23).

"Under Pennsylvania law, the plaintiff bears the burden of establishing negligence on

the part of the defendant by proving four elements: (1) a duty or obligation recognized by

law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting

injury; and (4) actual damages." *Fuhrman v. Mawyer*, No. 1:21-cv-02024, 2024 WL

1604603, at *4 (M.D. Pa. Apr. 12, 2024) (internal citation and quotation marks omitted).

"The imputation of vicarious liability requires a claimant to set forth a principal-agency

relationship." *Id.* at *5. The Supreme Court of Pennsylvania explains that:

> [i]n the context of vicarious liability, a principal is liable to third parties for the
> frauds, deceits, concealments, misrepresentations, torts, negligent acts and
> other malfeasances of his agent, even though the principal did not authorize,
> justify, participate in or know of such conduct of even if he forbade the acts or
> disapproved of them, as long as they occurred within the agent's scope of
> employment. This rule of liability is based on the premise that it is more
> reasonable for a principal, who has placed the agent in the position of trust and
> confidence, to be the one to suffer from the wrongful act of a third person, as
> opposed to an innocent stranger.

*McLaughlin v. Nahata*, 298 A.3d 384, 396 (Pa. 2023) (internal citation and quotation marks

omitted). As discussed above, the Court finds that Plaintiff has plausibly alleged a principal-

agent relationship between Sunlight and NJ Sun Tech and its salespersons. Thus, the

question becomes whether Plaintiff has plausibly alleged that Sunlight owed a duty of care to Plaintiff.

"Whether a defendant owes a duty to the plaintiff is a question of law." *R.D. v. Shohola, Inc.*, Civil No. 3:16-CV-01056, 2018 WL 5920640, at *4 (M.D. Pa. Nov. 13, 2018). "[D]uty in ordinary negligence nonetheless may be informed by compliance with legal requirements." *Walters v. UPMC Presbyterian Shadyside*, 646 Pa. 746, 772, 187 A.3d 214 (2018). Plaintiff alleges Sunlight had both a common law and statutory duty of care to Plaintiff. Specifically, Plaintiff alleges that Sunlight "was under a duty to exercise reasonable care in supervising and overseeing their employees and agents," as well as a statutory duty "to provide a copy of the contracts to Plaintiff in Spanish." (Doc. 21 at 23).

Having concluded that Plaintiff has plausibly alleged a principal-agent relationship between Sunlight and NJ Sun Tech and its salespersons, the Court will not dismiss Plaintiff's negligence claim at this time. Plaintiff has plausibly alleged both a common law and statutory duty, the breach of which may entitle Plaintiff to recover on his negligence claims. Further factual development is required, and Plaintiff are entitled to discovery at this early stage of the proceeding.

## V.    CONCLUSION

For the foregoing reasons, Defendant Sunlight's motion to dismiss will be denied in full. A separate order follows.

Robert D. Mariani
United States District Judge